705 So.2d 232 (1997)
Carl BERGERON, Plaintiff-Appellant,
v.
MAR-CON, INC., et al., Defendants-Appellees.
No. 97-263.
Court of Appeal of Louisiana, Third Circuit.
November 26, 1997.
Rehearing Denied February 25, 1998.
John Powers Wolff, III, Baton Rouge, for Carl Bergeron.
Joseph Michael Stiltner, Baton Rouge, for Mar-Con, Inc.
Before DOUCET, C.J., and THIBODEAUX and DECUIR, JJ.
DECUIR, Judge.
Carl Bergeron appeals the judgment of the Office of Workers' Compensation dismissing his claim for benefits against Mar-Con, Inc. and its workers' compensation insurer, Louisiana Workers' Compensation Corporation. Plaintiff contends the workers' compensation judge erred in finding that plaintiff was not in the course and scope of his employment at the time of his accident and in failing to award penalties and attorney's fees. We affirm.
The issue presented is whether Bergeron, who was employed as a rigger and roustabout with Mar-Con, Inc., was in the course and scope of his employment at the time he was injured in an automobile accident in Lafayette while en route in his personal vehicle from his Opelousas home to a heliport at Intracoastal City. Mar-Con's facility is located in Erath. Mar-Con does not dispute that it agreed to provide transportation from its facility in Erath to the work site or point of crew change, in this case Intracoastal City. Evidence presented at trial reflects that employees had the option of traveling in a company van from the defendant's facility in Erath to Intracoastal City or using their own vehicle.
It is well established in our law that generally an employee who is involved in an *233 accident while traveling to and from work is not within the course and scope of his employment and is therefore not entitled to worker's compensation benefits. Kennedy v. Martin Gas Transportation Co., Inc., 96-100 (La.App. 3 Cir. 8/21/96); 680 So.2d 1195, 1197, writ denied 96-2838 (La.1/24/97); 686 So.2d 860. When an employee is required to check in at a certain place and is then dispatched to the work site, he is generally in the course of employment in the travel between the check in place and the work site, but not between home and the check in place. Orgeron on Behalf of Orgeron v. McDonald, 93-1353 (La.7/5/94); 639 So.2d 224, 227.
Bergeron argues that an exception to the general rule that an employee who is involved in an accident while traveling to and from work is not within the course and scope of his employment applies in this case. Relying on Tarver v. Energy Drilling Company, 26,233 (La.App. 2 Cir. 10/26/94); 645 So.2d 796, plaintiff argues that because Mar-Con interested itself in the transportation of the plaintiff, as an incident to employment, either by contractually providing transportation or reimbursing him for travel expenses, the travel of the plaintiff from his home to the work site falls within the course and scope of his employment.
Bergeron first argues that defendant expressly agreed to provide transportation to him, and that by undertaking this express obligation, Mar-Con placed Bergeron within the course and scope of employment at the time of his accident. Plaintiff contends that Mar-Con's express obligation is memorialized in a document entitled "Conditions of Employment," included in plaintiff's personnel file. The document contains the following provision: "Mar-Con, Inc. will be responsible for transportation to and from the work site (or point of crew change)." Bergeron also contends that Mar-Con entered into a separate agreement by giving Bergeron a raise allegedly in compensation for obtaining his own transportation to the point of crew change.
We address first the applicable provision of the "Conditions of Employment." We find that by this provision Mar-Con agrees to be responsible for transportation from its facility to the job site, not from plaintiff's home to the job site. La.Civ.Code art.2053 provides:
A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of like nature between the same parties.
The custom of industry is a consideration in determining the true intent of the parties to an ambiguous contract provision. See Fontenot's Rice Drier, Inc. v. Farmers Rice Milling Co., Inc., 329 So.2d 494 (La. App. 3 Cir.), writ denied 333 So.2d 239 (La. 1976); Gary v. Miami Corp., 546 So.2d 318 (La.App. 3 Cir.1989). It is not the industry custom for a company such as defendant's to provide transportation from its roustabout's homes to the job site. In Lambert v. Maryland Casualty Co., 418 So.2d 553 (La.1982), the supreme court stated:
Contracts must be construed in such a way as to lead to logical conclusions and to give effect to the obvious intention of the parties. St. Ann v. American Insurance Companies, 182 So.2d 710 (La.App. 4th Cir.1966). They must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance. LSA-C.C. Art.1946. A cardinal rule in the construction of contracts is that the contract must be viewed as a whole and, if possible, practical effect given to all its parts, according to each the sense that results from the entire agreement so as to avoid neutralizing or ignoring any of them or treating them as surplusage. LSA-C.C. Art.1955; Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977); Reuter v.. Reuter's Succession,, 206 La. 474, 19 So.2d 209 (1944); Solomon v. Hickman, 219 So.2d 330 (La.App. 1st Cir.1969); Crow v. Southern Natural Gas Company, 210 So.2d 596 (La.App. 2d Cir.1968), writ refused 252 La. 834, 214 So.2d 160 (1968)....
Id. at 559-560.
The record contains evidence that plaintiff was not paid any travel expenses, nor was he paid for the use of his vehicle, nor was he "on *234 the clock" at the time of the accident. Nor was any other co-employee who chose to use his personal vehicle paid by Mar-Con for the use of his vehicle or travel expense. Bergeron had the option, as did the other roustabouts, of traveling in a company van to and from Mar-Con's facility in Erath to Intracoastal City or using his own vehicle. The company vehicle traveled to and from Erath to Intracoastal City with or without the plaintiff. Mar-Con contends that it never agreed to provide transportation from an employee's home to the heliport, and the testimony adduced at trial reflects the common intent of the parties was that Mar-Con agreed to provide transportation from its facility in Erath to the heliport, not from the plaintiff's home to the heliport.
Secondly, plaintiff argues that a raise he received actually represented travel expenses. The trial court concluded that Bergeron's raise was not related to his travel to and from work, and that Bergeron's decision to use his personal vehicle to go to the heliport was a matter of preference rather than a condition of employment. This finding is supported by evidence presented at trial. Several witnesses testified regarding this issue, but only Bergeron testified at trial that a raise he received was conditioned upon his using his personal vehicle. The record reflects that plaintiff's co-employees received the same raise whether they rode in the company vehicle or not. Furthermore, Bergeron's testimony that after he received the raise, he could not ride in the company vehicle from Mar-Con's facility to the heliport was impeached at trial. In deposition testimony, Bergeron had testified that he could have continued to ride in the company van after he received the raise.
We find that Mar-Con did not agree to provide transportation from Bergeron's home to the work site. Based upon the jurisprudence, and the facts and circumstances of this case, including industry custom and the custom between Mar-Con and its employees, the contract must be interpreted to provide that Mar-Con agreed to be responsible for transportation only from its facility in Erath to the work site or point of crew change. Thus, we find no error in the trial court's finding that Bergeron was not in the course and scope of his employment at the time of his automobile accident, and is therefore not entitled to worker's compensation benefits.
Having affirmed the trial court's ruling that plaintiff was not within the course and scope of his employment at the time of his accident, the issue of penalties and attorney's fees is rendered moot.
The judgment of the trial court is affirmed. Costs of appeal are assessed to Carl Bergeron.
AFFIRMED.
THIBODEAUX, J., dissents and assigns written reasons.
THIBODEAUX, Judge, dissenting.
I agree that it is a well-settled principle that, generally, an employee who is involved in an accident while traveling to or from work is not within the course and scope of employment and is therefore not entitled to workers' compensation benefits. However, this rule cannot be systematically applied to the numerous situations that exist in which employees do not work on the employer's premises or have a fixed place of work. On this issue, our supreme court has stated:
[A]n employee's place of residence is a personal decision not directly controlled by the employer, and treating commuting time as part of the determination of course and scope of employment would remove manageable boundaries from the determination.
The going and coming rule applies nicely when the employee has a fixed place of work, so that his traveling back and forth between his home and his fixed place of work is almost never in the course and scope of employment. Not all employees, however, work on the employer's premises or have a fixed place of work. The dispatching of employees to different work locations gives rise to many "shades of gray" in the otherwise "black and white" applications of the going and coming rule. When an employee is required to check in at a certain place and is then dispatched to the work site for that day, he is generally in the course and scope of employment in *235 the travel between the check in place and the work site, but not between home and the check in place. However, when an employee is instructed to report to different work sites which change periodically, without first reporting to a check in place, there are more variations in the determination of course and scope of employment.
Orgeron v. McDonald, 93-1353, pp. 5-6 (La.7/5/94); 639 So.2d 224, 227 (citations omitted).
Jurisprudential exceptions have been developed and widely followed to assist courts in these "gray" areas when it is not clear whether an employee is within the course and scope of employment. The second circuit in Yates v. Naylor Indus. Servs., Inc., 569 So.2d 616, 619-620 (La.App. 2 Cir.1990), writ denied, 572 So.2d 92 (La.1991) listed the exceptions that have arisen:
(1) If the accident happened on the employer's premises;
(2) If the employee was deemed to be on a specific mission for the employer, such as making a trip in the interest of his employer's business or pursuant to his employer's order;
(3) If the employer had interested himself in the transportation of the employee as an incident to the employment agreement either by contractually providing transportation or reimbursing the employee for his travel expenses;
(4) If the employee was doing work for his employer under circumstances where the employer's consent could be fairly implied;
(5) If the employee was hurt while traveling to and from one work site to another;
(6) If the employee was injured in an area immediately adjacent to his place of employment and that area contained a distinct travel risk to the employee, also known as the threshold doctrine; and
(7) If the operation of a motor vehicle was the performance of one of the duties of the employment of the employee. (citations omitted) (emphasis added).
As stated above, the general rule of law in workers' compensation cases is that accidents occurring while traveling to and from work are noncompensable; therefore, Bergeron would have to meet an exception that is applicable to this case in order to be awarded compensation benefits. He satisfies, I believe, the exception that finds an employee within the course and scope of his employment if the employer interested itself in the transportation of the employee as an incident to the employment agreement, either by contractually providing transportation or reimbursing the employee for his travel expenses. Mar-Con interested itself in Bergeron's transportation, as an incident to their employment agreement, by contractually undertaking, in its "Conditions of Employment" agreement, to be responsible for transportation to and from work sites or points of crew change.
Mar-Con does not dispute the fact that it contractually agreed to be responsible for the transportation of its employees who worked on offshore jobs, such as Sonat, to points of crew change, such as Intracoastal City. However, it argues that the agreement did not entail providing transportation from an employee's home, but from the Mar-Con facility in Erath only. It also contends that its act of "offering" transportation to employees does not bring an employee, like Bergeron, within the course and scope of employment if he refuses the offer.
Mar-Con's arguments are tenuous. After an examination of the words of the relevant provision, I find that it is susceptible to more than one interpretation and is, therefore, ambiguous. It is ambiguous because it does not state a point of origin from which the company would be responsible for the transportation of its employees to work sites or points of crew change. Article 2045 of the Civil Code requires that ambiguous terms be construed according to the intent of the parties. Intent is a factual issue which is to be inferred from all of the surrounding circumstances. Kuswa & Assoc., Inc. v. Thibaut Constr. Co., Inc., 463 So.2d 1264 (La.1985). However, the civil code also provides that a doubtful provision of a contract must be interpreted in light of its nature, equity, usages, the conduct or "course of dealing" of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La.Civ. *236 Code art. 2053 (emphasis added). Moreover, a doubtful provision of a contract must be construed against the party who caused the doubt for failure to give a necessary explanation. La.Civ.Code art.2057.
"Equity ... is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another." La.Civ.Code art.2055. The equity principle is especially relevant in the area of workers' compensation. "This state has long recognized the workers' compensation act is remedial in nature. In order to effectuate the humane policies it reflects, the law is to be liberally construed in favor of the injured employee." Henderson v. Pavy, 96-90, p.4 (La.App. 3 Cir. 5/15/96); 688 So.2d 1048, 1051 (citations omitted).
Furthermore, I am persuaded by the testimony of Leon Ortemond, Chairman of Mar-Con. Ortemond described his business as a crane-leasing operation in which cranes were delivered to sites on an on-call twenty-four hour basis with crews following a few days later to facilitate the use of the crane in offshore oil production work. He stated that for the last twenty years Mar-Con would send employees every day offshore to work because that was the nature of his business. Ortemond testified that when work shifted to Intracoastal City, the company noticed that two or three employees would drive themselves to the port because it was more convenient for them. The decision to use the company transportation was left up to the employee and that the company did not care how an employee got to a work site.
Although Ortemond stated that Mar-Con "did not care" how employees got to points of crew change or to work sites, employees who worked for Mar-Con were required to sign the "Conditions of Employment" agreement which expressly stated that Mar-Con would be responsible for transportation to and from the work site or point of crew change. As stated above, Mar-Con's business was that of providing cranes and work crews for offshore oil production work. Pursuant to the wording of this contract, an employee of Mar-Con is not responsible for his or her transportation to work sites or points of crew change. Although Mar-Con argues that it never intended to be responsible for the transportation of an employee from his or her home to their facility or to other work sites or points of crew change, the express agreement can be construed differently. It cannot be ignored that it is an express and unconditional contractual undertaking of responsibility.
In addition, the Mar-Con employees who work these offshore jobs are similarly situated to employees who travel regularly to different work locations as a requirement of their jobs. The risks inherent in having to report to different work sites, which change periodically, are not the same risks of commuting back and forth envisioned by workers' compensation. See Kennedy v. Martin Gas Transp., 96-100, p. 4 (La.App. 3 Cir. 8/21/96); 680 So.2d 1195, 1202, writ denied, 96-2838 (La.1/24/97); 686 So.2d 860. The supreme court stated in Orgeron that the general rule that excludes travel time to and from work from course and scope of employment permits exceptions, "particularly in circumstances where the risks of injuries to the employee are occasioned less by the employee's choice of domicile than by his employer's decision to operate without fixed work locations to which its employees may commute and around which they may organize their lives." Orgeron, 639 So.2d at 227. The facts of this case suggest that the risks of being injured for Bergeron, or other employees for that matter, were created more by the employer's requirements of employment than by any other cause. Moreover, this responsibility for the added risks of working at various locations as a condition of this job were recognized by Mar-Con and manifested in its providing transportation for its employees and its contractual expression of this responsibility.
It is difficult to reconcile Mar-Con's reasoning when it has given an express and unconditional contractual declaration of responsibility for the transportation of employees to work sites and points of crew change. Therefore, I do not find that Mar-Con's and the majority's interpretation of the provision is fair or equitable. Instead, I construe the ambiguous provision in favor of the injured *237 employee in this particular case, in an effort to promote the policies which underlie workers' compensation. I particularly note the following:
"The theory of workers' compensation rests upon the sound economic principle that those persons who enjoy the product of a business, initially the vendor of goods or services but ultimately the consumer, should bear the costs of production. Some production costs are associated with human losses, which like other production costs can be anticipated and passed along in minute increments in the form of workers' compensation premium costs."
Kennedy, 96-100 at p. 6; 680 So.2d at 1203 (Saunders, J., dissenting) (citing Malone & Johnson, Workers' Compensation, Sec.32, 13 Louisiana Civil Law Treatise (3d Ed.1994)).
For the foregoing reasons, I respectfully dissent.